Brian T. McCarthy (BM 4808)
Wayne A. Parker (WP 6661)
CHALOS, O'CONNOR & DUFFY, LLP
366 Main Street
Port Washington, New York  11050
Tel.: (516) 767-3600
Fax: (516) 767-3605

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In the Matter of Arbitration Between:
SWIFT SPLASH LTD., LIBERIA,
                                    Petitioner,

                                                                    **10 CV 6448 (JGK)**

       - against -

THE RICE CORPORATION, d/b/a
THE RICE COMPANY
                                    Respondent.
----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONFIRM AN ORDER TO SHOW CAUSEFOR ATTACHMENT IN AID OF ARBITRATION PURSUANT TO CPLR 6211(B)

Petitioner Swift Splash Ltd., Liberia ("Petitioner" or "Swift Splash"), by and through its attorneys, Chalos, O'Connor & Duffy LLP, pursuant to New York Civil Practice Law and Rules ("CPLR") Section 6211(b), submits this Motion to Confirm an Order to Show Cause for Attachment in Aid of Arbitration (the "Motion to Confirm") seeking the Court's confirmation of its Order to Show Cause (the "Order") dated August 30, 2010.  The Order authorized the attachment of funds in bank accounts belonging to the Respondent, The Rice Corporation, d/b/a The Rice Company ("Respondent" or "TRC") in aid of an arbitration pursuant to CPLR Section 7502(c), and authorized the garnishees named therein to restrain and enjoin any transfer of any assets in their

possession pending hearing and final determination by this Court on Petitioner's Petition for an Order to Show Cause for an Attachment in Aid of Arbitration (the "Petition").

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is currently participating in arbitral proceedings in London seeking to recover money damages for breach of a time charter party agreement dated September 5, 2007 (the "Charter Party"), including sums owed to Petitioner as a result of Respondent's repudiation and purported cancellation of the Charter Party.  Petitioner filed its Petition with the Court on August 30, 2010, and the Court issued the Order the following day. See Declaration of Wayne A. Parker, Esq., in Support of Motion to Confirm an Order to Show Cause for Attachment in Aid of Arbitration ("Parker Decl."), Exhibit A.

Petitioner served Respondent with a copy of the Petition, the Order and supporting papers via overnight courier on September 1, 2010. *See* Parker Decl., Exh. B. The Petition, the Order and supporting papers were also served on the garnishee banks named therein, i.e. HSBC Bank USA, N.A. ("HSBC Bank") and Wells Fargo Bank, N.A. ("Wells Fargo"), and Respondent's counsel on September 1, 2010. *See* Parker Decl., Exhs. C-E.

On September 1, 2010, Petitioner's counsel spoke with Mr. John Cyna, an HSBC Bank representative, via telephone about the Order. *See* Parker Decl., ¶ 5. Mr.Cyna indicated that his review of HSBC Bank records indicated no account at HSBC Bank under the Respondent's name.  While discussing Petitioner's concerns regarding hidden funds, Mr. Cyna suggested that the account might be under another name and that Swift Splash provide him with the Respondent's Federal Employment Identification Number

("FEIN") for Respondent to confirm whether any accounts were held at HSBC Bank on their behalf.  Later that day, the requested info was sent to HSBC Bank.  *See id.*

The next day, Swift Splash's counsel spoke with a different HSBC Bank representative, Ms. Lynn Hughes,  who confirmed on the telephone and later via a letter dated September 2, 2010, that HSBC Bank had in fact found a savings account labeled as the "Rice Special Escrow Account" under Respondent's FEIN.  *See* Parker Decl., ¶ 6. The Notification Letter stated the amount of the account is $7,323,698.03 and that HSBC Bank had restrained this account pursuant to the Order.  *See* Parker Decl., Exh. G.

**ARGUMENT**

Rule 64 of the Federal Rules of Civil Procedure governs this application for an attachment in aid of arbitration.  Pursuant to Rule 64, New York state law governs the Petition and subsequent proceedings in respect of any order of attachment issued as a result.  *See, Bank of China v. NBM LLC*, 192 F. Supp. 2d 183, 186 (S.D.N.Y. 2002).  To confirm an order of attachment under New York law, Petitioner must bear the burden of establishing the grounds for attachment, the need for continuing the levy and the probability of success on the merits.  *See id.*

**I.    PETITIONER HAS ESTABLISHED THE GROUNDS FOR ATTACHMENT**

A petitioner seeking an order of attachment in aid of arbitration in federal court located in New York State must satisfy the requirements of CPLR 7502(c) as well as those of CPLR Article 62.  Specifically, the requirements of CPLR 6212(a) govern all applications for an attachment under section 7502(c), except for the provision in section 6212(a) that refers to CPLR 6201 concerning grounds for attachment.  *SG Cowen Secs. Corp. v. Messih*, 224 F.3d 79, 82 (2d Cir. 2000).

3

C.P.L.R. § 7502(c) permits a pre-judgment attachment in aid of arbitration and that an arbitral proceeding shall be considered a cause of action for purposes of Article 62 provisions relating to time for commencement of an action for attachment.  C.P.L.R. § 7502(c)[1]; *see also*, *Bank of China*, 192 F. Supp. 2d at 187.  Hence, Petitioner has established the grounds for attachment under New York law.

## II.   PETITIONER HAS DEMONSTRATED PROBABLY SUCCESS ON THE MERITS OF THE UNDERLYING CHARTER DISPUTE

Petitioner also has the burden of showing that it is probable that it will succeed on the merits in the pending arbitration against the Respondent. *Id.*  The Petitioner meets this burden when it demonstrates that it is more likely than not that it will succeed on its claims. *See Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007).  In deciding whether this burden has been met, the Court should draw all legitimate references in favor of Petitioner as the party seeking the attachment. *See Samirah v. Sabhnani*, 2010 U.S. Dist. LEXIS 63860, at *5 (E.D.N.Y. 2010)(citing *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004).

The dispute currently being adjudicated before an arbitral panel in London arose from Respondent's unjustified repudiation and breach of the Charter Party.  Respondent *sole* justification cited in its arbitral submissions[2] for repudiating the Charter Party rests on its assertion that the chartered vessel "M/V SWIFT SPLASH" (the "Vessel") was off-hire for more than 30 days.  However, the facts stipulated by Respondent clearly show

---

[1] C.P.L.R. § 7502(c) provides, in part, "The supreme court…may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitration that is pending or that is to be commenced inside or outside this state, whether or not it is subject to the United Nations convention on the recognition and enforcement of foreign arbitral awards, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."

[2] Copies of both parties' arbitral submissions are included as Exhibits B-C to the Petition.

the Vessel was off-hire no more than 27 days, i.e. from September 25 thru October 22. As discussed, *infra*, Petitioner will probably succeed in recovering for the damages it sustained due to Respondent's unjustified breach of the Charter Party.

Under the terms of the Charter Party at the heart of this dispute, the Respondent agreed to pay Petitioner Twenty-Five Thousand Five Hundred United States Dollars ($25,500) per day for use of the motor vessel "SWIFT SPLASH" for an agreed upon period. *See* Petition, Exh. A, Clause 37. The express terms of Clause 37 of the Charter Party also provided, *inter alia*, that "...so long as full hire due less specifically agreed amount remains unpaid, [Petitioner] will be entitled to suspend performance of any and all of their obligations under this Charter Party, in port or at sea and shall have no responsibility for consequences directly arising therefrom and the hire shall continue to accrue..." *See id.*

The Charter Party's off-hire provision is found at Clause 15. That clause provides that off-hire events must arise from a breakdown or damage to the Vessel such that it "prevent[s] the full use and disposition of the vessel..." *See id.* at Clause 15. Charter Party Clause 59 also provides that hire shall be suspended in the event that the Vessel undertakes a voyage but must put back into dock by reason of accident or breakdown that results ***in loss of the "full use and disposition"*** (emphasis added) of the Vessel. *See id.* at Clause 59. If the Vessel was placed off-hire more than 30 (thirty) consecutive days, Clause 68 permitted the Respondent to terminate the Charter Party before the required redelivery date. *See id.* at Clause 68. The governing law of the Charter Party is English law. *See id.* at Clause 69.

Under well-settled English law, prima facie charter hire is payable continuously and it is the charterers' duty to bring themselves clearly within an off-hire clause if they contend that hire ceases. *See The Mareva A.S.* [1977] 1 Lloyd's Rep. 368, 381 (Q.B.). To meet this burden, a charterer must show that one of the events stipulated in the charter's off-hire list of events has occurred.  Until then, so long as the ship and crew are fully efficient and able to render to the charterers the service required, hire is payable. *Id*. Hence, a vessel is therefore only off-hire when she is unable to do what she was required to do when she was called upon to do it. *See The Berge Sund* [1993] 2 Lloyd's Rep. 453, 459 (C.A.).  In short, a fundamental rule of English charter party law holds a charterer bears the substantial burden in proving an off-hire event and it is clear from facts stipulated in the parties' statements in the arbitral proceedings that the Respondent cannot meet this burden.

During a voyage from Greece to England, the Vessel ran into heavy weather and sustained damage to its hatch covers. *See* Declaration of Peter Metz in Support of Petition for Order to Show Cause for Attachment in Aid of Arbitration ("Metz Decl.") ¶ 4. After several days stay in England, the Respondent ordered the Vessel to proceed to Ventspils, Latvia, in ballast on September 15 to load a cargo of urea. *See* Metz Decl., ¶¶ 8-9.  The Vessel arrived at Ventspils anchorage on September 21, 2008. *See* Metz Decl.,¶ 9.  After arrival, Respondent's surveyors conducted on the Vessel's hatches and found all but one of the hatch covers to be leaking.  The Respondent subsequently sent a message to the Petitioners alleging the Vessel was unseaworthy. *See* Metz Decl., ¶ 11.

The next day Petitioner communicated to TRC that the Vessel would depart Ventspils as soon as possible and proceed to Klaipeda, Lithuania, so as to undertake

repairs to the hatch covers. *See* Metz Decl., ¶ 12. After several days of delays caused by Respondent's failure to pay its agents in Ventspils, the Vessel proceeded to Klapeida, Latvia for repairs. *See* Metz Decl., ¶¶ 13-15. These repairs were completed on October 19, 2008. On October 22, 2008, Petitioner sent notice to TRC that the Vessel was back on-hire and awaiting TRC's orders. *See* Metz Decl., ¶ 16. As of this date, the Vessel had been off-hire for a period of 23 consecutive days, i.e. from September 29 thru October 22.[3]

Respondent was well aware of this fact then and now. On October 15, 2008, TRC sent a message to Petitioner on October 15, 2008, purporting to cancel the Charter Party pursuant to clause 68. *See* Metz Decl., ¶ 17. Petitioner rejected TRC's notice outright and stressed that the Charter Party remained in place and effect. *See* Metz Decl., ¶ 17. Indeed, Respondent acknowledged its error and revoked its notice of October 15, 2008. In its revocation notice, Respondent affirmed the effectiveness of the Charter Party on October 17, 2008, and noted that it had no right under clause 68 to terminate the Charter Party because "*the 30 running days didn't happen yet*." *See* Metz Decl., ¶ 19.

However, Respondent sent another message purporting to cancel the Charter Party pursuant to clause 68. *See* Metz Decl., ¶ 21. Petitioner immediately rejected Respondent's unjustified termination of the Charter Party sent on October 22 because the Vessel still had not been off-hire in excess of 30 days. *See* Metz Decl., ¶ 22.

The facts cited above, stipulated to by the parties in the London proceedings, clearly demonstrate that the Vessel was off-hire no more than 27 days. Respondent's repudiation of the Charter Party based on Clause 68 therefore was unjustified. Under

---

[3] Even granting Respondent's assertion that the Vessel was off-hire starting from September 25, i.e. when the hatch covers were found to be defective, the total time off-hire would be 27 days, and hence not more than 30 days as required under Clause 68 of the Charter Party.

English law, Respondent's repudiation will be deemed a breach of the Charter Party and Petitioner will be awarded an award for its damages. In short, Petitioner is almost certain to prevail in the pending arbitral proceedings and will recover for damages it sustained due to that breach.

## III.   RESPONDENT'S ATTEMPTS TO HIDE ITS FUNDS CLEARLY DEMONSTRATE THE NEED TO CONFIRM THE ORDER TO ENSURE ANY ARBITRAL AWARD WILL NOT BE RENDERED INEFFECTUAL

Lastly, Petitioner is required to demonstrate that the Order must be confirmed to ensure that any arbitral award will not be rendered ineffectual.

The purpose of provisional attachment in aid of arbitration is to hold the parties to the status quo until the arbitration to which they are parties is decided. *GBI Capital v. Aivaliotis*, 2001 N.Y. Misc. LEXIS 540 (N.Y. Sup. 2001), at *4. A petitioner seeking an attachment order meets its obligation to show that an arbitration award may be rendered ineffectual where it "demonstrate[s] the possibility, if not the likelihood, that absent the attachment requested, the ultimate arbitration award would be severely compromised." *County Natwest Secs. Corp. USA v. Jesup, Josephthal & Co., Inc.*, 180 A.D.2d 468, 469, 579 N.Y.S.2d 376, 376 (N.Y. App. Div 1992).

Specifically, C.P.L.R. § 6201 provides, in relevant part, that an order of attachment may be granted to in any action where a money judgment is sought and the defendant has disposed of, encumbered or secreted property with the intent to frustrate the enforcement of a judgment. C.P.L.R. § 6201(3); *see also*, *Bank of China*, 192 F. Supp. 2d at 188. C.P.L.R. § 7502(c) permits a court to issue an order of attachment only when a petitioner has demonstrated "that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." C.P.L.R. § 7502(c).

When first served with a copy of the Order and after conducting a search of its records, HSBC Bank indicated that it had no record of any account under the name of "The Rice Corporation" or "The Rice Company". *See* Parker Decl., ¶ 5. After discussing the issue further, Mr. Cyna suggested that the account might be under another name and requested the FEIN for The Rice Corporation. In response to his request, Respondent's FEIN previously obtained from a tax return was forwarded to HSCB Bank. *See id.*

The next day, another HSBC Bank representative, Ms. Lynn Hughes, confirmed during the course of a telephone call that in fact HSBC Bank had located an account under the name, "Rice Special Escrow Account" under Respondent's FEIN. *See* Parker Decl., ¶ 6. HSBC Bank subsequently re-confirmed that information via a letter and stated that it had frozen the account pursuant to the Order's terms. *See* Parker Decl., Exh. G.[4]

The use of a name other than its official business name for this account definitely rises to the level of evidentiary facts demonstrating Respondent has taken steps to secrete property and with the intent to defraud. Other facts further demonstrate that the Respondent has ample opportunities to make another attempt to hide funds or cheat it creditors.

Respondent maintains a European headquarters under the name of The Rice Company (Nederland) BV ("TRCNB"), with an office in Rotterdam, The Netherlands. *See* Parker Decl. Exh. I., pg. 4. Respondent and TRCNB share the same controlling shareholder, Mr. Jeetender Kumar Kapila. *See id.* Moreover, the Respondent and Mr. Kapila, own controlling shares or interest in other business entities formed and existing under the laws of other European nations with offices and bank accounts in Europe. *See*

---

[4] Petitioner's counsel later sent an e-mail to HSBC Bank requesting they confirm that they had restrained funds only in the amount permitted by the Order, i.e. $4,726,848.99. *See* Parker Decl., Exh. H.

*id.* at pp. 6-8.   Each of these entities maintains bank accounts with various banks scattered throughout Europe.   Hence, the Respondent has many options for entities and accounts to which it can transfer funds from the attached account if not restrained.   Given that Respondent has hidden the funds under a false name, the chances are that vacating the Order will lead to Respondent wiring the funds to other accounts in Europe and enforcement of any arbitral award ineffectual.

Respondent also has a well-documented history of breaching charter agreements and other maritime contracts.   The Respondent was named as a defendant in six (6) separate Supplemental Rule B attachments actions filed in this Court.[5] In each of these six (6) Supplement Rule B attachment actions, the plaintiffs were seeking to obtain security for breaches of Charter Parties by the Respondent.   A review of the docket entries for these cases clearly shows plaintiffs have been forced by Respondent's actioins in the past to obtain attachments during pending arbitration proceedings to ensure that any arbitral award would not be rendered ineffectual.   Put another way, this Court should take judicial notice of Respondent's well-documented history of forcing opposing parties to undertake attachment actions to ensure that judgments or arbitral awards will not be rendered ineffectual.

## CONCLUSION

There can be little doubt that the Order needs to be confirmed given Respondent's obvious attempts to hide its funds.

---

[5] These actions include: (1) *Marine Trading Ltd. v. The Rice Company*, S.D.N.Y. Index No. 00-cv-5835(GEL); (2) *Allied Maritime, Inc. v. The Rice Corporation*, S.D.N.Y. Index No. 04-cv-7029(SAS); (3) *Silver Streams Ltd. v. The Rice Company*, S.D.N.Y. Index No. 05-cv-6662 (VM); (4) *Mur Shipping B.V. v. The Rice Company*, S.D.N.Y. Index No. 08-cv-4358(TPG); (5) *Daeyang Shipping Co. Ltd. v. The Rice Company*, S.D.N.Y. Index No. 08-cv-9819(CM); and, (6) *Glory Wealth Shipping Services Ltd. v. The Rice Company*, S.D.N.Y. Index No. 08-cv-10245 (NRB).

Respondent's action in hiding funds at HSBC Bank in a savings account under a different name are clear proof that it seeks to hide funds from its many creditors, including possible judgment creditors such as the Petitioner. To allow Respondent to have access to and transfer the attached funds were serve only to render any arbitral award in Petitioner's favor ineffectual. For these reasons, Petitioner respectfully requests the Court confirm the Order.

Dated: Port Washington, New York
       September 7, 2010

                    CHALOS, O'CONNOR & DUFFY, LLP
                    Attorneys for Petitioner
                    Swift Splash Ltd.

By:    *Wayne A. Parker*
                    Brian T. McCarthy (BM 4808)
                    Wayne A. Parker (WP 6661)
                    366 Main Street
                    Port Washington, New York 11050
                    Tel.: (516) 767-3600
                    Fax: (516) 767-3605