UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SWIFT SPLASH LTD,

                    Petitioner,                      10 Civ. 6448 (JGK)

          - against -                                MEMORANDUM OPINION AND
                                                     ORDER
THE RICE CORPORATION, d/b/a
THE RICE COMPANY,

                    Respondent.

JOHN G. KOELTL, District Judge:

     The petitioner, Swift Splash LTD ("Swift Splash") moves,

pursuant to Federal Rule of Civil Procedure 64 and New York

Civil Practice Law and Rules ("C.P.L.R.") sections 6212(a), and

7502(c), for an order of attachment in aid of a London

arbitration.  The petitioner also moves, pursuant to C.P.L.R. §

6211(b), to confirm the ex parte attachment issued by this Court

on August 30, 2010.  The respondent, the Rice Corporation, d/b/a

the Rice Company ("TRC"), opposes the attachment and the order

of confirmation.[1]

                              I.

     This action arises from a dispute between the parties that

is currently pending before the London Maritime Arbitrators

Association ("LMAA"), regarding a time charter agreement.  TRC,

a Delaware Corporation registered in New York, is one of the

---

[1] The petitioner alleges subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 and 9 U.S.C. § 203, as well as 28 U.S.C. §1331.  It would also appear that there is admiralty jurisdiction.  See 28 U.S.C. § 1333.  It is clear that there is subject-matter jurisdiction.

world's largest chartering and vessel freight companies. (Bhapkar Decl. ¶¶ 2,9.)

Swift Splash, a Liberian corporation, is the owner of the vessel M/V Swift Splash (the "vessel"). (Metz Decl. ¶ 2.) On September 5, 2007, TRC and Swift Splash finalized a time charter agreement that gave TRC an option to charter the vessel from Swift Splash. (Swift Pet. for Order to Show Cause, Ex. A.) Later that month, TRC exercised its option for a minimum of twenty-four months, with a two-month extension option, at a rate of $25,000 per day of hire. (Swift Pet. for Order to Show Cause ¶ 11, 16.) The charter agreement gave TRC the option to cancel the charter in the event that the vessel was placed off-hire for more than thirty consecutive days through no fault of TRC. (Id. at Ex. A, clause 68.)

The events that occurred during the charter period are the subject of dispute between the parties. TRC alleges that the vessel was off-hire for more than thirty consecutive days due to leaking hatch covers that rendered the vessel unseaworthy. This condition, according to TRC, entitled TRC to cancel the charter agreement. Swift Splash, on the other hand, alleges that the vessel was not off-hire for more than thirty consecutive days, and that any delay was caused by TRC's own conduct, namely TRC's failure to satisfy debts owed to a creditor which resulted in the vessel being held at port. (Swift's Pet. for Order to Show

2

Cause ¶¶ 28-32.)   Swift Splash demanded that TRC perform as
required under the charter; TRC in turn commenced an arbitration
before the LMAA pursuant to the parties' charter agreement.
(Tookey Decl. ¶ 7; Swift Pet. for Order to Show Cause ¶ 43.)
TRC contends that Swift Splash breached the charter party by
holding the vessel off-hire for more than thirty days.

In the LMAA action currently pending, TRC has alleged
breach of contract damages totaling $883,727.30, (Tookey Decl.
Ex. B) and Swift Splash has submitted counterclaims totaling
$4,726,848.99.   (Swift Pet. for Order to Show Cause ¶¶ 46-48.)

Swift Splash instituted the current proceeding in this
Court by filing a petition for an order to show cause for an
attachment in aid of the London arbitration.   Swift Splash seeks
an order attaching two bank accounts it alleges belong to TRC
and are located in the Southern District of New York, one at
HSBC USA, N.A., and one at Wells Fargo.

On August 30, 2010, this Court signed an Order to Show
Cause for the attachment and entered a temporary restraining
order against garnishees that are in possession of property of
TRC, pending the hearing and determination of the application.
The temporary restraining order was served and used to attach
funds at HSBC in the full amount of $4,726,848.99 sought in the
petition.   (Parker Decl. ¶ 7.)   Thereafter, Swift Splash moved,
pursuant to C.P.L.R. § 6211(b) and Fed. R. Civ. P. 64, to

confirm the attachment.   TRC has opposed the attachment and the order of confirmation.   The Court held a hearing and accepted supplemental submissions from the parties.   Therefore, the issues before the Court are whether the attachment should be granted and whether the ex parte order of attachment should be confirmed.

## II.

New York law governs the availability of the provisional remedy of attachment in this Court.   See Fed. R. Civ. P. 64; see also Chem. Bank v. Haseotes, 13 F.3d 569, 572 (2d Cir. 1994). Under New York law, to obtain an order of attachment and to confirm an ex parte order of attachment, the petitioner bears the burden of establishing that: (1) there is a cause of action; (2) it is probable that the plaintiff will succeed on the merits; (3) a ground for attachment exists; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.   See C.P.L.R. § 6212(a); see also Bank of China, New York Branch v. N.B.M. LLC, 192 F. Supp. 2d 183, 186 (S.D.N.Y. 2002).   The sole ground for seeking an order of attachment in aid of arbitration is "that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."[2]   C.P.L.R. § 7502(c); see generally

---

[2] The petitioner argues that C.P.L.R. § 7502(c) should refer to an arbitration award being rendered ineffectual in New York, as opposed to being rendered ineffectual world-wide. (Swift Corres., Sept. 13, 2010.) This interpretation would expose a defendant to the harsh remedy of attachment merely because the defendant does not

Sivault Sys., Inc. v. Wondernet, Ltd., No. 05 Civ. 0890, 2005 WL
681457, at *3 n.1 (S.D.N.Y. 2005).

As the party seeking an attachment and confirmation, Swift
Splash "bears a heavy burden in attempting to establish its
right to an attachment . . . 'because New York attachment
statutes are construed strictly against those who seek to invoke
the remedy.'" Nat'l Audubon Soc'y, Inc. v. Sonopia Corp., No.
09 Civ. 975, 2009 WL 636952, at *2 (S.D.N.Y. March 6, 2009)
(quoting Buy This, Inc. v. MCI Worldcom Commc'n, Inc., 178 F.
Supp. 2d 380, 383 (S.D.N.Y. 2001)).  Moreover, because
attachment is a "harsh and extraordinary remedy," even if Swift
Splash satisfies this burden, relief is discretionary.  See JSC
Foreign Econ. Assoc. Technostroyexport v. Int'l Dev. and Trade
Servs., 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004) (collecting
cases).  In exercising this discretion, the Court must focus on
whether the petitioner has a "need" for the attachment.  See
Capital Ventures Int'l v. Republic of Argentina, 443 F.3d 214,
219-222 (2d Cir. 2006).  For the reasons stated below, the
petitioner fails to meet this heavy burden.

State and federal courts in New York construing the
requirement that an arbitration award may be rendered
ineffectual without an order of attachment have found the

---

have sufficient assets in New York, despite the fact that the defendant has substantial assets to satisfy the award, and
the arbitration is pending in another jurisdiction.  Such a reading of the statute is plainly incorrect given that "New
York attachment statutes are construed strictly against those who seek to invoke the remedy."  Buy This, Inc. v. MCI
Worldcom Commc'n, Inc., 178 F. Supp. 2d 380, 383 (S.D.N.Y. 2001).

requirement to be satisfied where the petitioner demonstrated the respondent's potential insolvency; where the respondent has transferred its assets to another; where the respondent is a shell company without appreciable assets; where the respondent has historically failed to pay creditors; or where the respondent has stated an intent to remove assets from the jurisdiction. Shah v. Commercial Bank, No. 09 CV 6121, 2010 WL 743043, at *3 (S.D.N.Y. Mar. 4, 2010) (collecting cases). Swift Splash has failed to demonstrate any of these indicia for a need for an attachment.

The respondent is not merely a shell company with no assets; rather, TRC is one of the world's largest chartering and vessel freight companies. (Bhapkar Suppl. Decl. ¶ 2.) It is actively functioning, chartering an average of 115 vessels in each of the last three years. (Bhapkar Decl. ¶ 2.) The chartering and freight manager for TRC swears that the valuation of the company as a going concern business with an excellent credit history and reputation in the market is in excess of $20,000,000, and that it has a financial capacity well in excess of the damages claimed by the petitioner. (Bhapkar Suppl. Decl. ¶ 2.) There is no showing that it has transferred assets in order to avoid any potential judgment against it. Moreover, TRC is not resisting the arbitration proceedings in London. Indeed

it was TRC, not Swift Splash, that commenced the arbitration
action before the LMAA.

Swift Splash argues that TRC "has a well-documented history
of breaching charter agreements and other maritime contracts[,]"
and directs the Court to six instances where TRC was named as a
defendant in attachment actions filed under Rule B of the
Supplemental Rules for Admiralty or Maritime Claims.  However,
the fact that a company was the subject of an arbitration
proceeding, and that a Rule B attachment proceeding was brought
in this Court, does not indicate a history of breaching
contracts, and certainly not a history of failing to pay
creditors.  The existence of an arbitration proceeding does not
indicate that the claim was well-founded or that it was not a
commercial dispute that was ultimately appropriately resolved.
TRC points out that it is currently defending three arbitration
proceedings in London.  All other disputes have been settled and
TRC has never "failed to pay any monies due to another party as
a result of a settlement or arbitration award."  (Bhapkar Decl.
¶ 7.)

That TRC has been named as a defendant in attachment
actions pursuant to Supplemental Rule B is no indication of its
potential insolvency or the need for security.  Supplemental
Rule B does not require a showing that the attachment is
necessary to satisfy a potential judgment; rather, a plaintiff

can obtain an attachment by showing that it has a valid prima facie admiralty claim against the defendant, the defendant cannot be found within the district, the defendant's property may be found within the district, and there is no statutory or maritime law bar to the attachment.  See Aqua Stoli Shipping Ltd., v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006).  Unlike attachments under the C.P.L.R. in aid of arbitration, no showing of need has been required for Rule B attachments in aid of maritime arbitrations.  Id. at 446-47. Therefore, the existence of Rule B attachments against TRC is no support at all for a need for an attachment in aid of arbitration against TRC.[3]

Finally, it should be noted that the funds that have been attached reside in an escrow account set up through an agreement between TRC and a third-party vessel owner.  (Dallen Decl. ¶ 2.) Because access to these accounts can only be obtained by written authorization from both TRC and the third-party vessel owner

---

[3] Prior to Aqua Stoli, some district courts required a showing that there was a need for the Rule B attachment.  One such case involved TRC.  In Allied Maritime, Inc. v. The Rice Corp., No. 04 Civ. 7029, 2004 WL 2284389 (S.D.N.Y. Oct. 12, 2004), the Court vacated a Rule B attachment against TRC precisely because the attachment was not needed.  The court explained: "TRC is more than capable of satisfying any judgment [the petitioner] might win. TRC is one of the largest rice trading companies in the world, with more than $575,000,000 in sales in 2003." Id. at *2.  While the requirement of a showing of need for a Rule B attachment is no longer good law after Aqua Stoli, the petitioner in this case has not shown why the findings with respect to TRC's financial responsibility are not still correct.
It should be noted that the prevalence of Rule B attachments has fallen off markedly after the recent Second Circuit Court of Appeals decision determining that Electronic Funds Transfers that passed through this District are not property of the sender or the recipient that can be the basis for a Rule B attachment in this District.  See Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 61 (2d Cir. 2009); see also Hawknet, Ltd., v. Overseas Shipping Agencies, 590 F.3d 87, 91 n.6 (2d Cir. 2009).

(Id.), it is not possible for TRC unilaterally to transfer these funds in an effort to evade a potential arbitration award.

Swift Splash has failed to demonstrate how the arbitration award to which it may be entitled may be rendered ineffectual in the absence of the requested relief.  This being the only ground upon which an attachment in aid of arbitration can be ordered, the petitioner's petition for an attachment and its motion to confirm the ex parte order of attachment must be denied.  It is therefore unnecessary for the Court to address the petitioner's likelihood of success in the arbitration.

### CONLUSION

The Court has carefully considered all of the parties' arguments.  To the extent they are not dealt with above, they are either moot or without merit.  For the reasons explained, the petitioner's petition for an attachment in aid of arbitration is **denied**.  The motion to confirm the ex parte order of attachment is **denied**.  The temporary restraining order and ex parte order of attachment are **vacated**.  The petition is therefore **dismissed**.  The Clerk is directed to enter judgment dismissing the case and closing Docket No. 3.

**SO ORDERED.**

**Dated:    New York, New York
           September 24, 2010**

John G. Koeltl
United States District Judge

9